"Expo, Inc., a corporation in which plaintiff Morrissette was a substantial stockholder, had two contracts with the Smithsonian Institution to fabricate and install two separate exhibits in Smithsonian museums. In lieu of payment and performance bonds for these contracts, plaintiff requested (in writing) the Northern Virginia Bank to furnish irrevocable letters of credit to the Smithsonian in connection with the performance and payment under the contracts. The Bank thereupon issued such letters to the Smithsonian, conditioned on the performance by Expo of the contracts and on payments by Expo of its suppliers and laborers. Expo defaulted on both contracts[1] and the Smithsonian drew upon the letters of credit to satisfy unpaid claims of Expo’s materialmen and laborers.
"Plaintiff then brought this suit, asserting in Counts I and II that, as the surety, he is entitled to recover the monies paid the Smithsonian under the letters of credit because there were change orders (under the two contracts) of which he had no notice, and as a gratuitous surety he *395 was relieved of all liability by these changes to which he did not consent. The Government has moved for partial summary judgment on Counts I and II and plaintiff has cross-moved for judgment on the pleadings. Oral argument has been had. We hold for the defendant.
"The materials made available to the court by the parties on these cross-motions show that each of the letters of credit issued by the Bank to the Smithsonian expressly provided that notice to the surety of contract modifications and changes was waived. Plaintiffs answer is that those portions of the instruments may have waived notice of changes (or modifications) to the Bank, but they did not waive notice to him. He points out that he did not sign the letters of credit.
"There is, however, no requirement that the customer (or guarantor) sign the letters of credit which may be issued by a bank at the customer’s request (see U.C.C. § 5-103). And it is also plain from the record that plaintiff specifically requested the Northern Virginia Bank to issue these letters of credit to the Smithsonian Institution and that his letters-of-request to the Bank declared that the letter of credit may be customary form and with customary provisions adopted by the Northern Virginia Bank. There is nothing to indicate that the clauses in the credit instruments as to waiver of contract changes were unusual or other than customary. It is likewise clear that plaintiff could have seen the actual text of the letters of credit before they were sent to the Smithsonian and could have discovered their terms.
"In these circumstances, we must infer that plaintiff knew or should have known the content of the letters of credit, and cannot now disavow the defendant’s right to rely on those terms. He was the initiator of the credit instruments and responsible for their provisions. It makes no difference that he did not sign the letters of credit or that the Bank may have characterized itself as the formal surety; insofar as the defendant is concerned, plaintiff is as much bound as the Bank by the provisions inserted in the instruments. In view of the purpose of the documents and plaintiffs direct connection with them, it makes no commercial sense to say that, though the Bank had to honor defendant’s demands under the letters of credit, plaintiff could immediately recover such payments back from the United States.
*396 "Count III of the petition alleges that, in any event, the Smithsonian holds certain sums due on the two contracts. The amount of these sums is disputed and we are not asked to resolve that controversy on these cross-motions. On Count III, therefore, the case will have to be returned to the Trial Division.
"it is ordered and concluded that defendant’s motion for partial summary judgment on Counts I and II is granted, plaintiffs cross-motion for judgment on the pleadings as to those counts is denied, and Counts I and II of the petition are dismissed. Count III of the petition is remanded to the Trial Division for further proceedings.”

 Expo, Inc. has since filed for voluntary bankruptcy.